# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP2095 |

| | |
|---|---|
| COMPLETE TITLE: | Great Lakes Excavating, Inc.,<br>  Plaintiff-Appellant-Petitioner,<br>  v.<br>Dollar Tree Stores, Inc.,<br>  Defendant-Respondent,<br>AMCON Design and Construction Co., LLC,<br>Riverworks Development Corporation and John H. Burkemper,<br>  Defendants,<br>Riverworks City Center, LLC,<br>  Intervenor-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 397 Wis. 2d 10, 959 N.W.2d 351
PDC No: 2021 WI App23 - Published

| | |
|---|---|
| OPINION FILED: | June 22, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 7, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | William S. Pocan |

JUSTICES:
REBECCA GRASSL BRADLEY, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ROGGENSACK, HAGEDORN, and KAROFSKY, JJ., joined. DALLET, J., filed a dissenting opinion, in which ANN WALSH BRADLEY, J., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-appellant-petitioner, there were briefs filed by *John E. Machulak* and *Machulak, Robertson & Sodos, S.C.,* Milwaukee. There was an oral argument by *John E. Machulak.*

For the intervenor-respondent, there was a brief filed by *Steven J. Slawinski, Jessica K. Haskell* and *O'Neil, Cannon,*

*Hollman, DeJong & Laing S.C.,* Milwaukee. There was an oral argument by *Steven J. Slawinski.*

**2022 WI 44**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2019AP2095
(L.C. No.  2019CV2945)

STATE OF WISCONSIN          :     IN SUPREME COURT

**Great Lakes Excavating, Inc.,**

      **Plaintiff-Appellant-Petitioner,**

  **v.**

**Dollar Tree Stores, Inc.,**

      **Defendant-Respondent,**

**AMCON Design and Construction Co., LLC, Riverworks Development Corporation and John H. Burkemper,**

      **Defendants,**

**Riverworks City Center, LLC,**

      **Intervenor-Respondent.**

**FILED**

**JUN 22, 2022**

Sheila T. Reiff
Clerk of Supreme Court

---

REBECCA GRASSL BRADLEY, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ROGGENSACK, HAGEDORN, and KAROFSKY, JJ., joined. DALLET, J., filed a dissenting opinion, in which ANN WALSH BRADLEY, J., joined.

---

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1  REBECCA GRASSL BRADLEY, J.  Great Lakes Excavating, Inc. (Great Lakes) seeks review of a court of appeals decision[1] affirming an order of the circuit court,[2] which granted partial summary judgment to Riverworks City Center, LLC (Riverworks) after finding Great Lakes fully waived its construction lien. Before signing a form lien waiver document titled "Waiver of Lien to Date," the owner of Great Lakes crossed off the words "to Date," replaced them with the handwritten word "Partial," and initialed next to the change.  Great Lakes argues this change "specifically and expressly" limited the lien waiver to the amount received——$33,448——in accordance with the requirements of Wis. Stat. § 779.05(1), and asserts extrinsic evidence reveals all parties intended the waiver to be partial. Alternatively, Great Lakes contends equitable estoppel precludes Riverworks from asserting Great Lakes waived its lien in full. Riverworks maintains the form constituted a full waiver of Great Lakes' lien rights because it failed to satisfy the statutory procedure to limit the waiver.

¶2  We hold the waiver document satisfied Wis. Stat. § 779.05(1) (2019-20)[3] by "specifically and expressly" limiting the waiver to "a particular portion of . . . labor, services,

---

[1] Great Lakes Excavating, Inc. v. Dollar Tree Stores, Inc., 2021 WI App 23, 397 Wis. 2d 210, 959 N.W.2d 351.

[2] The Honorable William S. Pocan, Milwaukee County Circuit Court, presided.

[3] All subsequent references to the Wisconsin Statutes are to the 2019-20 version unless otherwise indicated.

materials, plans, or specifications" in the amount of $33,448. Accordingly, we reverse the decision of the court of appeals.

## I.  BACKGROUND

¶3  In this construction lien waiver dispute, Riverworks contracted with AMCON Design and Construction Co. (AMCON) to construct a commercial building and parking lot in Milwaukee, Wisconsin, called the Riverworks City Center project (the Project).[4] Dollar Tree Stores, Inc. (Dollar Tree) was slated as the anchor tenant.  AMCON subcontracted with Great Lakes to perform excavating work for installation of the parking lot. The original contract amount for this work was $37,165, but once the installation started, Great Lakes encountered poor soil quality necessitating additional excavating work.  As a result, and following a series of change orders, the amount AMCON owed Great Lakes ultimately totaled $222,238.

¶4  After completing its work on the Project, Great Lakes invoiced AMCON for $222,238 and, when no payment was received, served Riverworks and Dollar Tree with a notice of intent to file a claim for a construction lien.  At that point, and upon AMCON's invitation, the owner of Great Lakes, Duwayne Bruckner (Bruckner), went to AMCON's office to collect payment.  A representative from AMCON told Bruckner only $33,448 was available for payment, and presented to Bruckner a preprinted lien waiver form, titled "Waiver of Lien to Date" for his

---

[4] This case comes to us on review of a partial grant of summary judgment.  The facts as stated are undisputed by the parties.

signature.   The printed body of the document provided, in relevant part:

> The undersigned, for and in consideration of $33,448.00 Dollars and other good and valuable consideration, the receipt whereof is hereby acknowledged, does hereby waive and release any and all lien or claim of, or right to, lien, under the statutes of the State of WI, relating to liens of mechanics, laborers and materialmen, with respect to and upon the foregoing described property, and the improvements thereon, and with respect to any statutory lien bond, and on the material, fixtures, apparatus or machinery furnished, and on the moneys, funds or other considerations due or to become due from the Company, on account of labor, services, material, fixtures, apparatus or machinery furnished to this date by the undersigned for the foregoing described property.

Prior to signing the waiver and accepting the $33,448 check, Bruckner crossed off "to Date" in the document title, replaced it with the handwritten word, "Partial," and initialed next to the modification.   Bruckner made no other changes to the form.

¶5   Following unsuccessful efforts to receive payment for the outstanding amount due, Great Lakes filed a "Subcontractor Claim for Lien" pursuant to Wis. Stat. § 779.06 and sued for the balance of $188,790.   Riverworks moved for partial summary judgment as to the claim for foreclosure of the lien, which Dollar Tree joined, on the grounds that Great Lakes did not comply with Wis. Stat. § 779.05(1)'s procedure for limiting the waiver to a particular portion of the work, resulting in a full waiver of its lien rights.   The circuit court agreed, granting Riverworks' motion because "[m]erely changing the title of the lien waiver, without additional explanation, does not

4

specifically and expressly limit the waiver to apply to a particular portion of such labor, services, materials, plans, or specifications."[5]

¶6  The court of appeals affirmed, concluding neither "crossing off 'to Date' and writing in 'Partial' in the title of the document" nor referencing "$33,448 Dollars" in the document "specifically and expressly limit the waiver to a particular portion of the work," "such as the labor in the original contract, which totaled $37,165."  Great Lakes Excavating, Inc. v. Dollar Tree Stores, Inc., 2021 WI App 23, ¶¶21-22, 397 Wis. 2d 210, 959 N.W.2d 351.  The court emphasized the waiver's "broad[]" statement that Great Lakes waived "any and all lien . . . on account of labor, services, material, fixtures, apparatus or machinery furnished to this date[.]"  Id., ¶22. Great Lakes moved for reconsideration, which the court of appeals denied.  We granted Great Lakes' petition for review.

## II.  STANDARD OF REVIEW

¶7  This court reviews a grant of summary judgment independently, "using the same methodology of the circuit court

---

[5] Because Dollar Tree's involvement in the case was based solely on Great Lakes' claim for foreclosure against Riverworks, the circuit court's July 31, 2019 order dismissing the foreclosure claim had the effect of disposing of all claims between Great Lakes and Dollar Tree.  The order did not explicitly dismiss Dollar Tree, so Great Lakes and Dollar Tree stipulated to Dollar Tree's dismissal from the case, acknowledging in the stipulation that Great Lakes would appeal the dismissal.  Great Lakes appealed the orders dismissing Dollar Tree and granting partial summary judgment to Riverworks, and Riverworks intervened.  Great Lakes maintains additional claims against Riverworks not at issue in this appeal.

and the court of appeals." Kemper Indep. Ins. Co. v. Islami, 2021 WI 53, ¶13, 397 Wis. 2d 394, 959 N.W.2d 912 (quoting Talley v. Mustafa, 2018 WI 47, ¶12, 381 Wis. 2d 393, 911 N.W.2d 55). "Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." Id. (quoting Talley, 381 Wis. 2d 393, ¶12).

¶8 This case also requires the interpretation of Wis. Stat. § 779.05(1). "Issues of statutory interpretation and application present questions of law." James v. Heinrich, 2021 WI 58, ¶15, 397 Wis. 2d 517, 960 N.W.2d 350 (citing Police Ass'n v. City of Milwaukee, 2018 WI 86, ¶17, 383 Wis. 2d 247, 914 N.W.2d 597).

### III. DISCUSSION

#### A. Construction Lien Statutes

¶9 "A construction lien is a remedy created by statute to insure payment to contractors, subcontractors, tradesmen, laborers, and materialmen who have furnished labor or materials in good faith for improvement of another's property." Hoida, Inc. v. M & I Midstate Bank, 2004 WI App 191, ¶20, 276 Wis. 2d 705, 688 N.W.2d 691 (quotation marks omitted). Statutes governing construction liens were first enacted more than "150 years ago to encourage construction by protecting the contractors and subcontractors of building projects." Kraemer Bros., Inc. v. Pulaski St. Bank, 138 Wis. 2d 395, 399, 406 N.W.2d 379 (1987).

¶10 The lien laws of this state have consistently been described as "remedial in character," with the purpose of "protecting the claims of tradesmen, laborers and materialmen for work and materials supplied."  Bayland Bldgs., Inc. v. Spirit Master Funding VIII, LLC, 2017 WI App 42, ¶2, 377 Wis. 2d 149, 900 N.W.2d 94 (quoting Wes Podany Constr. Co. v. Nowicki, 120 Wis. 2d 319, 324, 354 N.W.2d 755 (Ct. App. 1984)); see also Goebel v. Nat'l Exchangors, Inc., 88 Wis. 2d 596, 606, 277 N.W.2d 755 (1979); Tri-State Mech., Inc. v. Northland Coll., 2004 WI App 100, ¶8, 273 Wis. 2d 471, 681 N.W.2d 302 ("[O]ne of the general purposes of construction lien laws is to protect subcontractors of building projects." (citing Kraemer Bros., 138 Wis. 2d at 399)).  Because construction liens are "purely statutory," "[o]ne pursuing rights under the Wisconsin construction lien law must follow the statute or lien rights fail."  Wes Podany Constr. Co., 120 Wis. 2d at 324.

¶11 Construction liens can be waived under Wis. Stat. § 779.05(1).  That statute provides in relevant part:

> Any waiver document shall be deemed to waive all lien rights of the signer for all labor, services, materials, plans, or specifications performed, furnished, or procured, or to be performed, furnished, or procured, by the claimant at any time for the improvement to which the waiver relates, except to the extent that the document specifically and expressly limits the waiver to apply to a particular portion of such labor, services, materials, plans, or specifications.

The statute further directs that "[a]ny ambiguity in such document shall be construed against the person signing it."

7

§ 779.05(1). The lien waiver statute, created in 1968 as Wis. Stat. § 289.05(1) and renumbered in 1979, was "primarily a codification of what was common practice in the construction industry." Druml Co., Inc. v. City of New Berlin, 78 Wis. 2d 305, 310, 254 N.W.2d 265 (1977) (citing Walter B. Raushenbush, Wisconsin Construction Lien Law 1974 (1975)); see also § 3, ch. 351, Laws of 1967; Wis. Stat. § 289.05(1) (1967-68); § 57, ch. 32, Laws of 1979.

### B. The Lien Waiver Document

¶12 Resolution of this dispute revolves around whether Great Lakes "follow[ed] the statute" in limiting its lien waiver to the $33,448 received in consideration for the waiver, by replacing "to Date" with "Partial" in the document title. See Wes Podany Constr. Co., 120 Wis. 2d at 324; Wis. Stat. § 779.05(1). Riverworks asserts this handwritten modification creates an ambiguity because the printed body of the waiver document otherwise constitutes a full waiver under which Great Lakes "waive[s] and release[s] any and all lien or claim of, or right to, lien, . . . on account of labor, services, material, fixtures, apparatus or machinery furnished to this date," and as of that date, all of the work had been completed. Under § 779.05(1), Riverworks argues the resulting ambiguity must be "construed against the person signing it." Great Lakes disagrees, arguing the waiver is unambiguously a partial waiver because there is no competing interpretation of the document. We agree with Great Lakes that the waiver document is not ambiguous and satisfies § 779.05(1) as a partial waiver of the

8

lien with respect to only the $33,448 paid.[6] The handwritten term "Partial," in conjunction with the specific amount of consideration, indicates the lien was waived only to the extent of that portion of the total amount owed.

### 1. The Waiver is Unambiguously Partial

¶13 In construing the lien waiver document, we first address the inconsistency between the printed terms and the handwritten language. Read in isolation, the printed text of the waiver document, waiving all lien rights to date, constitutes a full lien waiver; it is undisputed that all of the work on the Project had been completed at the time Bruckner signed the waiver form. The handwritten addition of "Partial" in the document title, replacing the printed words "to Date," conflicts with the preprinted language in the body of the document indicating Great Lakes "does hereby waive and release any and all lien . . . on account of labor, services, material, fixtures, apparatus or machinery furnished to this date" with respect to the Riverworks property.

---

[6] Riverworks argued in its briefing, "The lien waiver contains no language relating the $33,448 to a particular portion of the work performed by Great Lakes." The court of appeals invalidated the waiver on this same basis. See Great Lakes Excavating, 397 Wis. 2d 210, ¶¶21-22. Riverworks later conceded at oral argument that a reference to a monetary value can satisfy the statutory requirement to limit the waiver to a "particular portion" of the work. As we explain further in Section III.B.2, we agree that limiting the lien waiver in this case to a specific dollar amount satisfies Wis. Stat. § 779.05(1) irrespective of Riverworks' concession.

9

¶14 Because a lien waiver document is a release, we apply contract principles to resolve this conflict. See Druml Co., 78 Wis. 2d at 311 (holding that a claimant's letter constituted a waiver under the lien waiver statute because it was "clear in its intent to release the lien claim"); Marx v. Morris, 2019 WI 34, ¶63, 386 Wis. 2d 122, 925 N.W.2d 112 ("A release is to be treated as a contract." (quoting Gielow v. Napiorkowski, 2003 WI App 249, ¶14, 268 Wis. 2d 673, 673 N.W.2d 351)). Riverworks contends a construction lien waiver is not a contract because Wis. Stat. § 779.05(1) does not "require" "an offer, acceptance, and consideration." While the statute does not require these elements, nothing in the statutory text strips the release in this case of its contractual nature. The lien waiver satisfies each element of a contract; accordingly, contract principles apply to its interpretation.

¶15 "[I]n accord with the general rule that all parts of a contract are to be given effect, the courts must seek to reconcile inconsistencies between the changed or added terms and the printed matter. When, however, the printed contract provisions irreconcilably conflict with the provisions added by the parties, the added provisions will control." 11 Williston on Contracts § 32:13 (4th ed.). The handwritten and printed terms in the waiver document are irreconcilable: the document is either a partial lien waiver or a full lien waiver, but it cannot be both. "Where written provisions are inconsistent with printed provisions (of a contract), an interpretation is preferred which gives effect to the written provisions."

10

<u>Tollefson v. Green Bay Packers</u>, 256 Wis. 318, 322, 41 N.W.2d 201 (1950) (quoting Restatement, Contracts § 236(e)); <u>see also</u> <u>Hicks Pub. Co. v. Wis. Cent. Ry. Co.</u>, 138 Wis. 584, 120 N.W. 512, 514 (1909) ("It is a canon of construction that where a contract 'is written in part and printed in part, as where it has been filled in upon a printed form, the parties usually pay much more attention to the written parts than to the printed parts. Accordingly, if the written provisions cannot be reconciled with the printed, the written provisions control.'"). In accordance with black letter contracts law, we reconcile this inconsistency by giving effect to the handwritten terms.[7]

---

[7] Remarkably, the dissent claims contract principles should not be applied to a contract. Dissent, ¶32. Legislative enactments concerning contracts do not displace the entire body of legal principles governing them. "To accomplish a change in the common law, the language of the statute must be clear, unambiguous, and peremptory." <u>Fuchsgruber v. Custom Accessories, Inc.</u>, 2001 WI 81, ¶25, 244 Wis. 2d 758, 628 N.W.2d 833. "[L]egislation in derogation of the common law should be strictly construed so as to have minimal effect on the common law rule." <u>Augsburger v. Homestead Mut. Ins. Co.</u>, 2014 WI 133, ¶40, 359 Wis. 2d 385, 856 N.W.2d 874 (citing <u>Fuchsgruber</u>, 244 Wis. 2d 758, ¶25; <u>NBZ, Inc. v. Pilarski</u>, 185 Wis. 2d 827, 836, 520 N.W.2d 93 (Ct. App. 1994)). Wisconsin Stat. § 779.05(1) directs our treatment of ambiguity in lien waivers, but it does not abrogate the entire suite of common law contract principles. Because the legislature removed a tool, the dissent abandons the whole toolbox. This is not the law.

In <u>NBZ</u>, the court of appeals determined covenants not to compete under Wis. Stat. § 103.465 are "subject to common law contract principles as well as [statutory] requirements." <u>NBZ</u>, 185 Wis. 2d at 836. Section 103.465 "sets forth the requirements for a[] . . . covenant in an employment contract but does not address on its face the question of whether a restrictive covenant must be supported by consideration." <u>Id.</u> at 835. The court concluded such a covenant requires consideration because the statute did not "abandon the

11

¶16 The existence of an inconsistency between preprinted and handwritten contract terms is distinct from contractual ambiguity; the latter exists if a document is "reasonably or fairly susceptible of more than one construction." Borchardt v. Wilk, 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990). By contrast, the presence of an inconsistency or conflict between terms precludes a reasonable interpretation of the document; read together, the terms are irreconcilable. See, e.g., Ketay v. Gorenstein, 261 Wis. 332, 334, 53 N.W.2d. 6 (1952) (explaining the court cannot "reject certain portions of the contract" "unless it presents an irreconcilable inconsistency"). The lien waiver in this case cannot be construed as a full waiver because the handwritten word "Partial" must be given

---

principles by which a contract is formed in the first instance." Id. at 837.

So too here. The lien waiver we construe in this case is a contract, "subject to common law contract principles as well as [statutory] requirements" under Wis. Stat. § 779.05(1). See id. at 836. The rule giving controlling effect to handwritten terms over preprinted contract provisions is neither expressly abrogated by § 779.05(1) nor in conflict with it, and the policies underlying the principle are not "irrelevant to the legislature's choice" to recognize lien waivers as a statutory matter. See Hinrichs v. DOW Chem. Co., 2020 WI 2, ¶55, 389 Wis. 2d 669, 937 N.W.2d 37 (declining to apply common law principles because "the policies underlying the economic loss doctrine——the allocation of risk and the distinction between tort and contract law——are irrelevant to the legislature's choice to provide a purely statutory cause of action and remedy by way of § 100.18"). That "the common law contract rule . . . is irrelevant" to a non-contractual waiver does not negate its application to a contractual waiver. See dissent, ¶32.

12

effect. Because the word "Partial" is handwritten, it governs over the preprinted language waiving all lien rights to date.

¶17 This principle that handwritten terms control over preprinted provisions "is based on the inference that the language inserted by handwriting . . . is a more recent and more reliable expression of [the parties'] intentions than is the language of a printed form." Edwin W. Patterson, The Interpretation and Construction of Contracts, 64 Colum. L. Rev. 833, 855 (1964) (citing Restatement, Contracts § 236(e) (1932)). "Since the parties actually chose to add to or modify the printed contract, the written terms presumably better reflect their intention than those contained in a printed contract intended for general use." 11 Williston on Contracts § 32:13 (4th ed.).

¶18 Consistent with the principle that handwritten terms control over the form's printed provisions, the term "Partial" prevails over the language in the printed body of the document waiving all lien rights to date. Resolving this conflict leaves no ambiguity as to whether the document is a full or partial waiver. Because it can be only one or the other, there is no reasonable alternative construction of the document other than as a partial waiver.

2. The Waiver is "Specifically and Expressly" Limited to $33,448

¶19 Concluding that the document is a partial waiver does not alone resolve the case; ambiguity could exist if the lien waiver is not specifically and expressly limited to a particular

13

portion of work. This is not so in this case. "Partial" unambiguously applies to the "particular portion of such labor, services, materials, plans, or specifications" represented by the amount of the "$33,448 Dollars" written on the waiver form and received in consideration for the partial release.[8] Wis. Stat. § 779.05(1).

¶20 Riverworks conceded during oral argument that a waiver could be limited to a dollar amount, and suggested Great Lakes could have satisfied Wis. Stat. § 779.05(1) by agreeing "I hereby waive my lien rights to the extent of X dollars." Although this would have been a clearer limitation of the waiver, we decline to adopt such a formulaic reading of

---

[8] The dissent claims our contract construction "rests on the false premise that when a party receives a certain amount of money in exchange for a waiver, it must be waiving its lien only up to that dollar amount," and suggests Great Lakes could have accepted the $33,448 "in exchange for waiving its lien claims related to the original contract amount of $37,165" or "any other dollar amount." Dissent, ¶30. Great Lakes could have chosen to limit its waiver as the dissent describes, which we would have honored had the lien waiver document so indicated. But no such limitation can be reasonably gleaned from the document before us. The dissent posits purely hypothetical intentions possibly underlying Great Lakes' addition of "Partial," which, according to the dissent, make the waiver ambiguous. In doing so, the dissent reaches beyond the four corners of the document to introduce ambiguity where it does not exist. There are myriad ways Great Lakes might have intended to limit its lien waiver, but we need not consider any of these speculative iterations because our review is confined to the four corners of the lien waiver document, which——as the dissent acknowledges——is "all the property owner has to go on[.]" Id., ¶26. Confined to its four corners, the lien waiver document in this case yields but one reasonable interpretation, and while it does not mirror the model forms reproduced by the dissent, it nonetheless meets the statutory bar.

§ 779.05(1). The statute specifies only that a partial lien waiver must be "specific[] and express[]."[9] The partial waiver satisfies § 779.05(1) because it is unambiguously partial—waiving Great Lakes' lien rights only in the amount of "$33,448 Dollars"—an amount representing the "particular portion" of the work to which the waiver applies.

¶21 In further support of this reading, as of the date the lien waiver was signed, no one contended that any of the $222,238 allegedly due to Great Lakes did not cover lienable work. Prior to 2006, waivers of construction lien rights were limited to "labor and materials furnished or to be furnished by the claimant at any time for the improvement to which the waiver relates[.]" Wis. Stat. § 779.05(1) (2003-04). In 2006, the legislature amended § 779.05(1) to include "all labor, services, materials, plans, or specifications performed, furnished, or procured, or to be performed, furnished, or procured, by the claimant at any time for the improvement to which the waiver relates[.]" 2005 Wis. Act 204; § 779.05(1) (2005-06). Because no party maintains that any portion of the fully completed work is not lienable, limiting the waiver to a specific dollar value does not create any additional ambiguity.

---

[9] Contrary to Riverworks' suggestion at oral argument that we are left to "divine" what portion of work the waiver attempted to release, no divination is required. Construing the document as a partial waiver limited to $33,448 is the only reasonable interpretation of the contract. Interpreting the waiver before us does not involve the kind of "guessing games" Riverworks and the dissent assert the statute is designed to avoid. See dissent, ¶31.

15

¶22 Because we conclude the lien waiver document within its four corners satisfies the statutory requirements by specifically and expressly limiting the waiver to the $33,448 Great Lakes received in consideration, we need not decide the other issues presented, including the propriety of considering extrinsic evidence of intent, or whether equitable estoppel precludes Riverworks' claim.

## IV. CONCLUSION

¶23 The construction lien waiver document on its face satisfies the statutory requirements of Wis. Stat. § 779.05(1) necessary to limit the waiver of Great Lakes' lien rights. The document "specifically and expressly" restricts the lien waiver to "a particular portion of such labor, services, materials, plans, or specifications"——the $33,448 received in consideration of the waiver.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶24 REBECCA FRANK DALLET, J. (*dissenting*). This case presents a straightforward application of a straightforward statute. The majority's reliance on common law contract principles is misguided, resulting in a decision at odds with the legislature's chosen policy regarding construction-lien waivers. I therefore respectfully dissent.

¶25 Wisconsin Stat. § 779.05(1) provides that if a party wants to limit a construction-lien waiver to only a portion of what it's owed, it must "<u>specifically and expressly</u> limit[] the waiver to apply to a <u>particular portion</u> of [the] labor, services, materials, plans, or specifications" (emphases added). Such specificity is necessary because if the party limits the waiver in an ambiguous way, that ambiguity "shall be construed against the person signing" the waiver. <u>Id.</u> Without a specific, express, and unambiguous limitation, the waiver applies to "<u>all</u> [of that party's] lien rights." <u>Id.</u> (emphasis added).

¶26 The rationale for both the statute's heightened-clarity requirement and its presumption in favor of a complete waiver is rooted in the "reliance placed on waivers by owners . . . making payouts." <u>See</u> Legislative Council Note, 1967, Wis. Stat. § 289.05.[1] Wisconsin allows both general and subcontractors to file lien claims, regardless of whether the property owner is aware of the subcontractor's work. Thus, if a

---

[1] Section 289.05 was eventually renumbered as § 779.05, but the relevant language was unchanged. <u>See</u> § 57, ch. 32, Laws of 1979.

property owner hires a general contractor, who hires a subcontractor, who hires a subcontractor, that last subcontractor has the same right to file a construction lien for its work as does the general contractor. And because a general contractor, not the property owner, hires and supervises subcontractors, the owner may not know how much work a subcontractor has performed or what they are owed for that work. In addition, the property owner is often not a party to a construction-lien waiver between contractors. Thus, when a subcontractor who signed a lien waiver later attempts to foreclose on a lien, claiming that the waiver was only partial, all the property owner has to go on is what is within the four corners of the waiver document. See generally Walter B. Raushenbush, Wisconsin Construction Lien Law 8-12 (1975). This explains the statute's requirements that a lien waiver "shall be deemed to waive all lien rights" unless it "specifically and expressly limits the waiver to apply to a particular portion" of the claimant's work. See § 779.05(1); see also Robert J. Smith et al., Wisconsin Construction Law and Construction Liens 218 (1989) (cautioning that "care should always be taken" when writing a partial lien waiver because any "attempt to hold back part of the claimant's rights will be construed against the claimant").

¶27 There is no one form a party must use to limit the scope of its lien waiver, but the following sample forms demonstrate the specificity required under § 779.05. The State Bar's Construction Lien Law Handbook contains the following example:

## SUGGESTED LIEN FORMS

## A.9. Waiver of Construction Lien

**WAIVER OF CONSTRUCTION LIEN**
§779.05, Wis. Stats.

Date: _____

1.    Contractor's Name: _____
      Contractor's Address: _____
      _____
      _____

2.    Property Improved by Contractor's Work (check one):
      ☐    Street address: _____
      _____

      ☐    Legal description attached.

3.    Contractor's Work furnished at request of:_____
                  (name of party which requested or contracted for work)

4.    Waiver of lien rights is made for (select one):
      ☐    The following Work: _____
      _____

      (insert description of type of labor, services, material, plans or specifications supplied by Contractor, including percentage performed, dollar value, and/or dates as necessary to accurately describe the Work to which the Waiver relates, stating exceptions, if any)

      ☐    All Work on this Property to date of this Waiver.

      ☐    Except:_____

5.    Title Companies, Lenders or others may require disclosure of the Contractor's subcontractors and material suppliers before disbursement of funds related to the Contractor's above-described Work. If so required, specify name(s) of Contractor's subcontractors and material suppliers furnishing any portion of the Work being waived:
_____

      (attach additional sheet if more space is required)

      CONTRACTOR NAME:

      _____

      By: _____
                  (Signature)

      Authorized Agent's Name:_____
                  (print name of person signing above)
      Title: _____
      Address: _____
      _____

      Telephone Number: (____) - _____

Steven W. Martin & Bridget M. Hubing, Wisconsin Construction Lien Law Handbook app. II at 14 (4th ed. 2019). One of the statute's drafters offers another option:[2]

LIMITED WAIVER OF CONSTRUCTION LIEN

For value received, the undersigned hereby waives all rights to or claims for a lien on the land hereafter described, for any and all work, materials, plans or specifications furnished between the ___ day of _____, [20]__, which was the last day of furnishing any labor or materials to which this waiver relates, for the improvement of said lands, said improvements being done for [owner] by [contractor], said lands being situated in _____ County, State of Wisconsin, and described as follows:_____.

It is expressly stipulated that this waiver applies only to work done or materials, plans or specifications furnished on or before the above-stated last date of furnishing any labor or materials to which this waiver relates, and that the work done or materials furnished by the undersigned for said job on or before said date was _____ [describe]. The amount of compensation due or paid for such work, for which lien is hereby waived, is _____ [Here insert the dollar amount of compensation waived by this partial waiver].

The right to assert construction lien rights for work done or materials furnished after said date on said job is hereby expressly reserved.

Walter B. Raushenbush, Wisconsin Construction Lien Law 267-69 (1975). Both sample forms include specific spaces for the lien claimant to expressly limit the waiver to a certain "percentage performed, dollar value, and/or dates . . . necessary to

---

[2] See Walter B. Raushenbush, Wisconsin Construction Lien Law, at iv (1975) (explaining Raushenbush's role in the statute's drafting process).

accurately describe the [w]ork to which the [w]aiver relates, stating exceptions, if any." See Martin & Hubing, supra.

¶28 Great Lakes' waiver stands in stark contrast to those samples in that it lacks the "careful detailing," see Raushenbush, supra, at 268-69, of the particular portion of work covered by the waiver:

The waiver plainly states that Great Lakes waived and released "any and all" liens or claims related to all of work Great Lakes "furnished to this date [March 20, 2017]." Great Lakes had completed all of its work on the Riverworks project in November 2016, so here, "to this date" encompasses the entirety of Great Lakes' work. The only change Great Lakes made to the waiver was to the document's title, where it changed "Waiver of Lien to Date" to "Waiver of Lien Partial."

¶29 Nowhere, however, does Great Lakes' waiver specifically and expressly identify what particular "part" of Great Lakes' lien claims were waived. The waiver is not limited to a certain dollar amount's worth of services, work completed up to a certain date (short of the date Great Lakes signed the waiver), or certain raw materials, for example. Rather, it expressly states that, in exchange for $33,448, Great Lakes waived "any and all" lien claims related to all work it had furnished to date——which, since it had already completed the project, encompassed the original contract as well as all of the subsequent change orders. See Tufail v. Midwest Hosp., LLC, 2013 WI 62, ¶26, 348 Wis. 2d 631, 833 N.W.2d 586 (explaining that courts "construe [an unambiguous] document according to its literal terms" because we "presume the parties' intent is evinced by the words they chose"). Accordingly, § 779.05(1) mandates the court to construe the waiver as waiving all lien claims.

¶30 Great Lakes argues, and the majority mistakenly agrees, that because Great Lakes received $33,448 in exchange for the lien waiver, the waiver applies to $33,448 worth of the $222,238 Great Lakes claims it was owed for the project. But that argument rests on the false premise that when a party receives a certain amount of money in exchange for a waiver, it must be waiving its lien only up to that dollar amount.[3] For

_____

[3] Had Great Lakes intended to limit its waiver to $33,448 worth of its services, it could have specifically and expressly done so by waiving its lien claims "to the extent of $33,448 only of the $222,238 worth of services provided." See Smith, supra, at 262.

6

example, Great Lakes could have accepted AMCON's $33,488 payment in exchange for waiving its lien claims related to the original contract amount of $37,165. Or Great Lakes could have accepted $33,488 to waive its lien claims related to any other dollar amount. The point is: we don't know.[4] And given that every other term in the document indicates a complete waiver, interpreting it as such is the only option.

¶31 Great Lakes also argues that its handwritten edit reflects its and AMCON's intent for the waiver to be a partial one, and therefore Riverworks (who hired AMCON) should be held to that understanding. The problem with that argument is two-fold. First, Riverworks was not a party to the waiver and the record does not indicate that AMCON was Riverworks' agent, such that Riverworks would be bound by AMCON's actions. See Romero v. W. Bend Mut. Ins. Co., 2016 WI App 59, ¶38, 371 Wis. 2d 478, 885 N.W.2d 591 (summarizing general agency principles). Plus, because Riverworks was not a party to the waiver, it has no way of knowing what Great Lakes intended other than by reading the document——which says that Great Lakes waived "any and all" lien claims for all of its work. See Tufail, 348 Wis. 2d 631, ¶26. Second, even if crossing out "to date" and writing "partial" in the title is enough to indicate that Great Lakes and AMCON intended the document to waive only part of Great Lakes' lien

---

[4] All we can do is guess about what Great Lakes' handwritten edit to the waiver's title means. But even if we knew what "partial" meant, it would still be at odds with the rest of the waiver's text, making the waiver at best ambiguous. And § 779.05(1) requires the court to resolve any ambiguity against Great Lakes.

7

claims, we——and Riverworks——are still left to guess the particular portion of work to which Great Lakes is waiving its lien claims. The point of § 779.05(1), however, is to eliminate such a guessing game from how courts or third-parties understand a lien waiver. As one of the statute's drafters explained, the statute tilts heavily in favor of construing lien waivers as waiving all lien claims because other, less stringent possibilities present "serious problems of proof" regarding the portion of work to which a partial waiver would apply. Raushenbush, supra, at 102-03. Great Lakes' position would circumvent the statute's text and must therefore be rejected.

¶32 Instead of focusing on the text of § 779.05(1), the majority wrongly relies upon default principles of contract law. It claims that the handwritten "term" places the waiver in irreconcilable conflict with itself, and therefore we must apply the common law rule that a handwritten provision controls over a conflicting printed provision. For starters, Great Lakes did not change a "term" of the contract; it changed part of the title while leaving all of the substantive terms unchanged. But more importantly, common law contract rules are irrelevant here because a construction lien is a "purely statutory right" that "cannot be maintained" outside of the relevant statutory rules. See Goebel v. Nat'l Exchangors, Inc., 88 Wis. 2d 596, 606, 277 N.W.2d 755 (1979) (quoting Rees v. Ludington, 13 Wis. 308, 311-12 (1860); Scott v. Christianson, 110 Wis. 164, 167, 85 N.W. 658 (1901) ("The lien being purely a statutory right, it must be pursued as the statute directs, or it fails."). Section 779.05 provides the statutory rule for how to construct

8

and interpret lien waivers. Under that rule, a waiver is binding even without consideration——that is, even if the waiver is not a contract.[5] Accordingly, the common law contract rule the majority references is irrelevant. See Goebel, 88 Wis. at 606; see also Hinrichs v. DOW Chem. Co., 2020 WI 2, ¶55, 389 Wis. 2d 669, 937 N.W.2d 37 (explaining that common law principles are "irrelevant" when the legislature enacts a statute directly addressing the same issue).

¶33 Concluding that Great Lakes waived all of its lien claims would undoubtedly be a harsh result. But just because Great Lakes waived its lien claims does not mean that it can't try to recover what it's owed under the construction contract. See § 779.05(1) (explaining that a lien waiver "is a waiver of lien rights only, and not of any contract rights of the claimant otherwise existing"). Moreover, the legislature has made the policy choice that construction-lien waivers should be treated as complete waivers unless they contain specific and express limitations. The legislature can change that policy by amending the statute to allow a party to limit a waiver in the way Great Lakes attempted to here. See Kohn v. Darlington Cmty. Schs., 2005 WI 99, ¶43, 283 Wis. 2d 1, 698 N.W.2d 794. As § 779.05(1) reads now, Great Lakes' claim fails. I would therefore affirm the court of appeals' decision.

---

[5] Although a waiver doesn't have to be a contract, Great Lakes' waiver is one because it gave up something of value——all of its lien claims——in exchange for consideration. But the lien-waiver statute applies whether or not the lien waiver is a contract. See Goebel, 88 Wis. at 606; Christianson, 110 Wis. at 167.

¶34  I  am  authorized  to  state  that  Justice  ANN  WALSH BRADLEY joins this opinion.